**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LUCIA CARAVEO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.** |
| **vs.** | ) | |
| | ) | |
| **VINITA EXPRESS INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff, Lucia Caraveo, by her attorneys, the Garfinkel Group, LLC, complains against Defendant Vinita Express Inc., for (1) discharging Plaintiff in violation of the Surface Transportation Assistance Act of 1982, 49 U.S.C. § 31105 ("STAA"), and its implementing regulations, 29 C.F.R. § 1978.100, *et seq.*; (2) retaliating against Plaintiff by terminating her employment in violation of the Illinois Whistleblower Act, 740 ILCS 174/1, *et seq.*, ("IWA"); (3) retaliating against Plaintiff by terminating her employment, constituting common law principles of retaliatory discharge; and (4) for failing to pay Plaintiff her earned hourly wages and agreed rate of pay in violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* ("Wage Act"), and in support thereof states:

## INTRODUCTION

1. Plaintiff was employed as an over the road commercial truck driver by Defendant from approximately August 4, 2020, through August 18, 2020.

2. Between August 4, 2020, and August 18, 2020, Plaintiff, on several occasions, complained internally to the Defendant and refused to perform certain work orders that would have required her to violate federal motor carrier safety regulations, notably hours of service requirements and electronic logging device ("ELD") policies.

3. In response, Plaintiff was unlawfully terminated on August 18, 2020.

1

4.    The Defendant falsely represented to Plaintiff that she was discharged as a result of damage to one of Defendant's trucks.

5.    Rather, Plaintiff was discharged because she filed internal complaints and refused to perform work related to Defendant's failure to abide by hours-of-service requirements and ELD regulations.

6.    Defendant's actions in terminating Plaintiff's employment also violate the IWA and common law principles of retaliatory discharge.

7.    In violation of the Wage Act, Defendant also failed to pay Plaintiff her agreed rate of pay for driving approximately 3,569 miles.

8.    Accordingly, Plaintiff brings this lawsuit to enforce the provisions of STAA, its implementing regulations, the IWA, common law principles of retaliatory discharge, and the Wage Act.

## JURISDICTION & VENUE

9.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1367(a) (supplemental jurisdiction).

10.    Venue is appropriate in this district pursuant to 28 U.S.C. §1391(b)(1), (2) (venue generally).

## ADMINISTRATIVE EXHAUSTION

11.    On January 4, 2021, Plaintiff timely filed a complaint with the Occupational Safety and Health Administration ("OSHA Complaint") pursuant to the employee protection provisions of STAA, alleging that her termination was unlawful under STAA, or in retaliation for reporting Defendant's illegal practices. See Plaintiff's OSHA Complaint attached as Exhibit A.

12.    The Secretary of Labor subsequently investigated Plaintiff's allegations from approximately January 4, 2021, until August 2, 2021.

2

13.    During that time, Defendant refused to cooperate with the Secretary of Labor in its investigation of Plaintiff's allegations detailed in the OSHA Complaint.

14.    As OSHA has not issued a final decision within 210 days after the filing of the OSHA Complaint and the delay is not due to the bad faith of the Plaintiff, this Court has original jurisdiction to hear a *de novo* action pursuant to STAA. 49 U.S.C. § 31105(c).

**PARTIES**

15.    Plaintiff Lucia Caraveo ("Caraveo") is a resident of El Paso, Texas, and a former employee of Defendant Vinita Express Inc.

16.    Defendant Vinita Express Inc. ("Vinita") is an Illinois for-profit corporation that maintains its principal place of business in Cook County, Illinois, within this judicial district.

17.    Defendant is a licensed and bonded freight shipping and trucking company, operating a freight hauling business with an office and a transfer yard in Kane County, at 409 Christina Drive, East Dundee, Illinois 60008.

18.    Defendant also operates at least 1 commercial vehicle in East Dundee, Illinois under USDOT No. 3094297 as defined by 49 U.S.C. §31101(1)(A) on highways in commerce to transport cargo, interstate, and having a gross vehicle weight rating or gross vehicle weight of at least 10,0001 pounds.

19.    Trucks and other commercial motor vehicles from across the country come into Defendant's East Dundee, Illinois transfer yard to drop off and pick-up cargo loads.

20.    At all relevant times herein, Plaintiff was an "employee" as the term is defined by 29 C.F.R. § 1978.101(h).

21.    At all relevant times herein, Defendant was an "employer" as the term is defined by 29 C.F.R. § 1978.101(i).

22.     At all relevant times herein, Defendant was a "commercial motor carrier" as the term is defined by 29 C.F.R.§ 1978.101(d).

23.     At all times relevant herein, Defendant was Plaintiff's employer, and Plaintiff was Defendant's employee, within the meaning of the IWA and the Wage Act. 740 ILCS 174/5; 820 ILCS 115/2.

## FACTS

Plaintiff's Compensation and Hire

24.     On approximately August 4, 2020, the Defendant hired Plaintiff to work as an over the road commercial truck driver.

25.     At all relevant times herein, both Plaintiff and Defendant were subject to the Department of Transportation ("DOT") and Federal Motor Carrier Safety Administration ("FMCSA") regulations regarding hours-of-service and use of ELDs.

26.     Plaintiff's jobs duties included hauling dry products for the Defendant, consisting primarily of food, equipment, and other non-perishable items.

27.     Defendant's employment offer was for Plaintiff to pick up and deliver loads, across the United States, in exchange and in consideration for Plaintiff earning 0.52 cents per mile driven. Plaintiff was to be paid after submitting proofs of delivery and the original bills of lading to the Defendant.

28.     Plaintiff accepted those unambiguous terms of employment.

Defendant's Procedures

29.     Plaintiff was instructed to report to her dispatcher, Dmitry last name unknown ("LNU"), who in turn, provided her with the relevant load(s) information and delivery instructions.

30. At all times mentioned herein, once the load(s) had been delivered, Plaintiff sent a text message and email to Dmitry (LNU), which included a picture of the bill signed by both Plaintiff and a representative of the company receiving the delivery.

31. In all instances, Dmitry (LNU) confirmed receipt of the same.

32. From approximately August 4, 2020, until August 18, 2020, Plaintiff completed seven (7) trips for the Defendant and driving approximately 6,952 miles.

33. Plaintiff promptly submitted all proofs of delivery and original bills of lading to the Defendant. See proofs of delivery and original bills of lading attached as Exhibit B.

34. At all relevant times herein, Plaintiff used an ELD to record her on-duty hours, as hereinafter defined, pre-trip inspection reports and other required data entries.

<u>Definitions & DOT Freight and Trucking Hours of Service Limit Regulations</u>

35. The FMCSA, an arm of the DOT, regulates the number of hours a truck driver may drive per day as well as the total number of hours he or she may work per week.

36. These are commonly referred to as the Hours-of-Service rules, promulgated to regulate the number of hours drivers are allowed to drive in order to minimize drowsiness and driver fatigue. Federal Motor Carrier Safety Administration, *Hours of Service* (HOS), United States Department of Transportation (Nov. 11, 2011, 2:24 PM), <u>https://www.fmcsa.dot.gov/regulations/hours-of-service</u>.

37. For purposes herein, on-duty or on-duty time means all time from the time a driver begins to work or is required to be in readiness to work until the time the driver is relieved from work and all responsibility for performing work. 49 C.F.R. §395.2.

38. For purposes herein, "reset" or "reload" shall be understood as Albina's (LNU), systematic practice of doctoring Plaintiff's ELD such that Plaintiff was made to drive beyond that which permissible under federal law.

5

39.     Federal law mandates that drivers, as defined under 49 CFR § 390.5T, like Plaintiff, must not drive after a period of 14 consecutive hours after coming on-duty following 10 consecutive hours off-duty. 49 C.F.R. §395.3(a)(2).

40.     Drivers are limited to 11 hours of driving time during the aforementioned 14-hour period. 49 C.F.R. §395.3(3)(i).

41.     Likewise, in accordance with federal law, drivers must be given at least 34 consecutive hours off-duty after they have been on-duty for at least 70 hours over an 8-consecutive day period. 49 C.F.R. §395.3(b)(2); 49 C.F.R. §395.3(c)(1).

42.     Moreover, no driver shall operate a commercial motor vehicle, and a motor carrier shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin to continue to operate the commercial motor vehicle. 49 C.F.R. §392.3.

DOT Regulations Related to ELDs

43.     An ELD is a technology that automatically records a driver's driving time, inspection reports, and other aspects of the hours-of-service records.

44.     The DOT's regulations concerning the use of ELDs allows truck drivers to monitor their driving hours and therefore adhere to hours-of-service regulations.

45.     Under federal law, no driver or motor carrier may disable, deactivate, disengage, jam, or otherwise block or degrade a signal transmission or reception, or reengineer, reprogram, or otherwise tamper with an automatic on-board recording device or ELD so that the device does not accurately record and retain required data. 49 C.F.R. §395.8(e)(2).

46.     In accordance with federal law, a motor carrier may not coerce a driver to make a false certification of the driver's data entries or record of duty status. 49 C.F.R. §395.30(e).

6

47. Similarly, under federal law, a motor carrier must not alter or erase, or permit or require alteration or erasure of, the original information collected concerning the driver's hours of service. 49 C.F.R. §395.30(f).

48. Federal law also provides that all entries relating to a driver's duty status must be legible and made by ***the driver***. 49 C.F.R. §395.8(f)(2) (emphasis added).

49. Moreover, pursuant to DOT regulations, before driving a vehicle, the driver shall:

    (a) be satisfied that the vehicle is in safe operating condition.

    (b) review the last driver inspection report if required by 49 C.F.R. §396.11(a)(2)(i); and

    (c) sign the report to acknowledge that the driver has reviewed it and that there is a certification that the required repairs have been performed.

49 C.F.R. §396.13.

<u>Defendant Ordered Plaintiff to Drive in Excess of the Hourly Requirements Required by the DOT and Regularly Manipulated Plaintiff's ELD to Comply with DOT Regulations</u>

50. From approximately August 4, 2020, until Plaintiff's unlawful termination on August 18, 2020, the Defendant ordered Plaintiff on several occasions to drive in excess of what is permitted under DOT regulations and while Plaintiff was fatigued.

51. At all times mentioned herein, all drivers employed by the Defendant were required to use an ELD to record and track their work hours and miles driven.

52. At all times mentioned herein, aside from Plaintiff, Albina (LNU), had Plaintiff's ELD password and was the only other individual with the ability to access Plaintiff's ELD.

53. On multiple occasions during Plaintiff's employment, Albina (LNU), an employee of the Defendant, falsified Plaintiff's records on her ELD pertaining to hours driven and inspection reports and demanded Plaintiff falsely certify the fraudulent ELD entries.

<u>Trip 1 – Elk Grove Village, Illinois to Temple, Texas (August 4, 2020 – August 6, 2020)</u>

7

54. On approximately August 4, 2020, Plaintiff picked up a load in Elk Grove Village, Illinois to be delivered to Temple, Texas on August 6, 2020, a drive of approximately 16.5-hours.

55. When Plaintiff arrived in Elk Grove Village on August 4, 2020, she observed that Defendant's truck, which she was to drive, had prior damage.

56. Shortly after Plaintiff picked up the load in Elk Grove Village, she attempted to record her on-duty hours and noticed her ELD was not accurately identifying her location.

57. Plaintiff then called Dmitry (LNU) and said her ELD was not accurately identifying her location, and therefore not accurately recording her hours driven and miles traveled.

58. In response, Dmitry (LNU), said "wait until tomorrow and we can talk to Albina." For the next two days, Plaintiff's ELD did not accurately identify her location and thus failed to accurately track her hours driven and miles traveled.

59. On approximately August 5, 2020, Plaintiff messaged Dmitry (LNU) that due to lack of sleep and exhaustion, she had to shutdown right after she completed her delivery. See text message conversation between Plaintiff and Dmitry (LNU) attached as Exhibit C.

60. In response, Dmitry (LNU), ordered Plaintiff to violate federal DOT safety regulations, to wit, 49 C.F.R. §392.3, and to continue driving after she had completed the delivery.

61. Dmitry (LNU), went on to inform Plaintiff that after she had completed said delivery, he would reset her on-duty hours in her ELD to zero so she could continue driving without any rest period, a violation of 49 C.F.R. §395.8(f)(2) and 49 C.F.R. §395.8(e)(2).

62. On or about August 6, 2020, Dmitry (LNU), ordered that Plaintiff sign out and then sign back into her ELD.

63. Plaintiff then observed that her ELD had stopped working, and she noticed her driving information from the past two days had been erased.

64.     Plaintiff always accurately recorded her hours driven on her ELD, in accordance with 49 C.F.R. §395.8(f)(2).

65.     Plaintiff subsequently explained to Dmitry (LNU) that she could not log into her ELD as someone else was already logged in under her name.

66.      Upon information and belief, Albina (LNU), the only other individual with access to Plaintiff's ELD, reset Plaintiff's ELD to falsely reflect that she had not driven approximately 10 hours the prior two days, in violation of 49 C.F.R. §395.8(e)(2), 49 C.F.R. §395.30(f), and 49 C.F.R §395.8(f)(2).

67.     Shortly after Plaintiff went off-duty on August 6, 2020, Dmitry (LNU) messaged Plaintiff and demanded she pick up another load, this time in Waco, Texas, to be delivered in Arlington, Texas.

68.     Between August 4, 2020, and August 6, 2020, Plaintiff was forced to drive 16.5 hours and was off duty for approximately 6.5 hours, a violation of 49 C.F.R. §395.3(a)(2).

Trip 2 – Waco, Texas to Arlington, Texas (August 6, 2020 – August 7, 2020)

69.     On approximately August 6, 2020, after only having been off duty for approximately 6.5 hours, Plaintiff was ordered by Dmitry (LNU) to pick up a load in Waco, Texas, approximately 45 minutes from Temple, Texas, to be delivered in Arlington, Texas on August 7, 2020.

70.     Plaintiff drove approximately 1 hour and 45 minutes from Waco to Arlington. She arrived in Arlington on August 7, 2020.

71.     Between August 4, 2020, and Plaintiff's arrival in Arlington on August 7, 2020, Plaintiff was forced to drive approximately 18.75 hours without being provided 10 consecutive off-duty hours, in violation of 49 C.F.R. §395.3(a)(2).

Trip 3 – Mansfield, Texas to North Plains, Oregon (August 7, 2020 – August 10, 2020)

9

72. On August 7, 2020, Plaintiff was directed by Dmitry (LNU) to pick up a load in Mansfield, Texas, to be delivered in North Plains, Oregon on August 10, 2020.

73. During this trip, Plaintiff again experienced issues with her ELD.

74. On August 9, 2020, Dmitry (LNU) demanded that Plaintiff log into her ELD and approve all changes made by Albina (LNU) pertaining to Plaintiff's hours driven, in violation of 49 C.F.R. §395.30(e).

75. In response, Plaintiff messaged Dmitry (LNU) that she was again unable to log into her ELD.

76. Dmitry (LNU) said he would speak to Albina and get back to her but to go ahead and approve changes.

77. Plaintiff again explained to Dmitry that she could not log into her ELD because somebody else was already logged in under her credentials.

78. Plaintiff was eventually able to access her ELD and discovered there was no record of her having driven from approximately August 4, 2020, to August 10, 2020, despite her having driven approximately 50 hours during this time.

79. Upon information and belief, Albina (LNU) reset Plaintiff's ELD between August 8, 2020, and August 9, 2020, in violation of 49 C.F.R. §395.8(e)(2).

80. Upon information and belief, Albina (LNU) altered Plaintiff's ELD entries regarding Plaintiff's hours driven in violation of §395.8(f)(2) and 49 C.F.R. §395.30(f).

81. On or about August 10, 2020, Plaintiff sent Dmitry (LNU), the following text message, "I got it working. I am stuck in traffic and headed to the truck stop. I have not slept," effectively explaining that she was incapable of operating Defendant's truck due to fatigue and exhaustion, in violation of 49 C.F.R. §392.3. See text message conversation between Plaintiff and Dmitry (LNU) attached as Exhibit D.

82.     During this trip, based on Dimitry's (LNU) express orders, Plaintiff rested only 2-3 hours during that 25-hour period, a violation of 49 C.F.R. §395.3(a)(2).

Trip 4 – Wilsonville, Oregon to Denver, Colorado (August 10, 2020 – August 13, 2020)

83.     At Dmitry's (LNU) insistence, Plaintiff departed Wilsonville, Oregon on August 10, 2020, for Denver, Colorado. Wilsonville to Denver is an approximately 19-hour drive.

84.     Prior to her departure, on approximately August 10, 2020, Albina (LNU) texted Plaintiff and instructed she approve all changes to her ELD, a violation of 49 C.F.R. §395.30(e).

85.     Plaintiff once again informed Albina that was unable to log into her ELD as somebody else was already logged in under her name.

86.     When Plaintiff logged into her ELD, she noticed that the pre-trip records had already been filled out by someone else, despite Plaintiff having not yet completed the requisite inspection.

87.     Prior to each trip, Plaintiff completed her pre-trip inspection and recorded the same in her ELD, as required under 49 C.F.R. §395.8(e)(2) and 49 C.F.R §395.8(f)(2). Plaintiff was the only individual permitted to complete the pre-trip inspection and record the same.

88.     Upon information and belief, Albina (LNU) again altered Plaintiff's ELD on August 10, 2020, falsely representing the completion of Plaintiff's pre-trip inspection, in violation of 49 C.F.R. §395.8(e)(2), 49 C.F.R §395.8(f)(2), and 49 C.F.R. §396.13.

89.     As set forth in greater detail below, Plaintiff also informed Dmitry (LNU), that his insistence that she regularly drive without scheduled breaks and through the night, was detrimental to both her physical and mental health, and in violation of 49 C.F.R. §392.3:

    a.  On or about August 11, 2021, Dmitry (LNU) messaged Plaintiff, "You did not drive all night?" and "you need this load for sure. I am just trying to help us make a money." See text message conversation between Plaintiff and Dmitry (LNU) attached as Exhibit E.

11

b. Plaintiff responded, "I do not need you to treat me like I am a robot. I needed to rest. Yesterday I only slept about 4 hrs. The day before I only slept 3 hrs." See text message conversation between Plaintiff and Dmitry (LNU) attached as Exhibit F.

**Trip 5 – Englewood, Colorado to Arcade, New York (August 13, 2020 – August 15, 2020)**

90.     On August 13, 2020, Plaintiff picked up a load in Englewood, Colorado, to be delivered in Arcade, New York on August 15, 2020, approximately 23 hours.

91.     Between August 13, 2020, and August 15, 2020, Plaintiff drove approximately 23 hours and was off duty for only 6 hours, another violation of 49 C.F.R. §395.3(a)(2) and 49 C.F.R. §395.3(3)(i).

92.     From August 4, 2020, to August 15, 2020, Plaintiff drove approximately 82 hours, without being afforded 34 consecutive off duty hours, in violation of 49 C.F.R. §395.3(b)(2) and 49 C.F.R. §395.3(c)(1).

**Trip 6 – Niagara Falls, New York to Neenah, Wisconsin (August 16, 2020 – August 17, 2020)**

93.     Plaintiff's next scheduled pick-up and corresponding delivery was Niagara Falls, New York to Neenah, Wisconsin.

94.     Plaintiff drove from Niagara Falls to Neenah, approximately 11 hours, and was only off duty for approximately 2 hours, a violation of 49 C.F.R. §395.3(a)(2) and 49 C.F.R. §395.3(3)(i).

95.     Plaintiff drove approximately 93 hours from August 4, 2020, until August 17, 2020, without being off duty for 34 consecutive hours, an additional violation of 49 C.F.R. §395.3(b)(2) and 49 C.F.R. §395.3(c)(1).

**Trip 7 – Green Bay, Wisconsin to Chicago, Illinois (August 17, 2020 - August 18, 2020)**

96.     Plaintiff's final trip for Defendant was to pick up a load in Green Bay, Wisconsin on August 17, 2020, and deliver in Chicago, Illinois on August 18, 2020, totaling 3.5 hours.

97.    After delivering her final load in Chicago, Illinois, and at the request of Dmitry (LNU), Plaintiff headed to Defendant's truck yard in East Dundee, Illinois.

98.    Plaintiff arrived in East Dundee in the middle of the afternoon on of August 17, 2020.

<u>Defendant Illegally fired Plaintiff in Retaliation for Refusing to Violate DOT Regulations</u>

99.    On the morning of August 18, 2020, Plaintiff learned she was being terminated under the pretextual justification of allegedly causing damage to one of the Defendant's trucks.

100.    On or about August 18, 2020, Fleet Manager Dmitry Mihalas ("Mihalas") showed Plaintiff pictures that purported to show damage to the vehicle.

101.    Thereafter, Chris (LNU), a manager employed by the Defendant accompanied Plaintiff to the truck yard as they viewed the damage to the truck.

102.    Plaintiff informed Chris (LNU), that the alleged damage to the vehicle was already present when Plaintiff was assigned to it.

103.    Chris (LNU) told Plaintiff that the damage caused to the truck would be deducted from Plaintiff's wages.

104.    In response, Plaintiff requested that Chris (LNU), provide her with pictures from when the truck was delivered to Plaintiff at the beginning of her employment.

105.    Chris (LNU), declined to show Plaintiff pictures of the previous damage to the truck and requested Plaintiff sign a form confirming she caused the damage to the truck.

106.    Plaintiff refused to sign Defendant's form ordering Plaintiff to accept responsibility for pre-existing damage to the truck.

107.    Chris (LNU) patently ignored Plaintiff's refusal to sign the form above and informed Plaintiff that he would indicate in his records that Plaintiff refused to sign off on the damage to the truck.

108. Defendant rejected Plaintiff's reasonable request to provide her with paystubs or other payroll documentation from her last five trips for Defendant.

109. On or about August 18, 2020, and subsequent to her termination, Dennis (LNU), a member of Defendant's human resources department, arrived at the Defendant's truck yard in East Dundee, Illinois.

110. Dennis (LNU), told Plaintiff, "I am really sorry for what happened to you. I do not understand why you were fired. I do not think it was right."

111. Dennis (LNU), told Plaintiff, "I am going to go ahead and help you if you need transportation and a place to stay."

112. Defendant terminated Plaintiff for submitting internal complaints regarding Defendant's violations of DOT's hours of service regulations and ELD maintenance and for refusing to operate one of Defendant's trucks, in violation of 49 U.S.C. §31105(a)(1)(A)(i) and 49 U.S.C. §31105(a)(1)(B)(i).

Defendant Failed to Pay Plaintiff's Wages

113. In addition to Plaintiff's unlawful termination, Defendant failed to pay Plaintiff for all hours worked for the Defendant.

114. At the time of her termination, Plaintiff had driven approximately 6,952 miles.

115. On or about August 18, 2021, Defendant paid Plaintiff $1,759.00 for driving approximately 3,383 miles.

116. To date and based on the parties' agreed rate of 0.52 cents per mile, Plaintiff is still owed $1,855.88 for approximately 3,569 miles.

Plaintiff's Complaints Regarding Defendant's Violations of Hours-of-Service Requirements and Refusal to Violate Said Requirements were the Sole Reason for her Termination

117.     On several occasions between August 4, 2020, and August 18, 2020, Plaintiff drove for at least eleven hours within the specified 14-hour period without being provided 10 consecutive hours off-duty, in violation of 49 C.F.R. §395.3(a)(2) and 49 C.F.R. §395.3(3)(i).

118.     As of August 15, 2020, Plaintiff had driven 70 hours in a span of 8 days and was not provided 34 consecutive hours off-duty, and further, from August 4, 2020, to August 18, 2020, Plaintiff drove approximately 106.5 hours without being given 34 consecutive hours off-duty at any point. Defendant's practices unquestionably violated 49 C.F.R. §395.3(b)(2) and 49 C.F.R. §395.3(c)(1).

119.     On several occasions between August 4, 2020, and August 18, 2020, Plaintiff expressed to Defendant that she had already driven more than the maximum allowable hours pursuant to DOT regulations, in violation of 49 C.F.R. §395.3(a)(2), 49 C.F.R. §395.3(3)(i), 49 C.F.R. §395.3(b)(2) and 49 C.F.R. §395.3(c)(1).

120.     Along the same lines, Plaintiff expressed to Defendant, on multiple occasions, that she was incapable of operating a commercial motor vehicle because her ability to do so had been impaired due to being fatigued from driving for the Defendant, a violation of 49 C.F.R. §392.3, and therefore refused to operate one of Defendant's trucks.

121.     Pursuant to 29 C.F.R. §1978.102(b)(1), complaints of this nature can be filed orally or in writing.

122.     Internal complaints to management are protected activity in all Federal circuits under STAA. *Doyle v. Rich Transport, Inc.*, 93-STA-17 (Sec'y Apr. 1, 1994).[1]

---

[1] *See Davis v. H.R. Hill, Inc.*, 86-STA-18 (Sec'y Mar. 18, 1987), slip op. at 3-4 (both internal and external safety complaints protected). Cf. *Bivens v. Louisiana Power and Light*, 89-ERA-30 (Sec'y June 4, 1991), slip op. at 4-5 (citing cases) (internal safety complaints to employer protected under environmental whistleblower laws).

15

123. Plaintiff's statements regarding violations of hours-of-service requirements and fatigue were related to Defendant's violations of federal motor carrier safety regulations. 49 U.S.C. §31105(a)(1)(A)(i).

124. Plaintiff's refusal to operate Defendant's truck was related to Defendant's violations of federal motor carrier safety regulations. 49 U.S.C. §31105(a)(1)(B)(i).

125. Defendant terminated Plaintiff based on her statements regarding hours-of-service requirements and fatigue, in violation of 49 U.S.C. §31105(a)(1)(A)(i).

126. Likewise, Plaintiff was also terminated based on her refusal to operate one of Defendant's trucks, in violation of 49 U.S.C. §31105(a)(1)(B)(i).

<u>Plaintiff's Complaints Regarding Defendant's Alteration and False Certification of Plaintiff's ELD were the Reason for her Termination</u>

127. Defendant also illegally altered Plaintiff's ELD and ordered Plaintiff to make false certifications with respect to her driving hours, pre-inspection reports and other required data entries on her ELD.

128. On several occasions between August 4, 2020, and August 18, 2020, Defendant tampered with and altered Plaintiff's ELD entries, and as a result, misrepresented her hours driven and status of pre-inspection reports, in violation of 49 C.F.R. §395.8(e)(2), 49 C.F.R. §395.30(f), and 49 C.F.R. §396.13.

129. In violation of 49 C.F.R. §395.30(e) and 49 C.F.R. §395.8(f)(2), Defendant also demanded Plaintiff approve changes made by them, even though Plaintiff was the only individual permitted to record entries in her ELD.

130. On multiple occasions. Plaintiff expressed to Defendant, that she was unable to access her ELD as a result of someone was already being logged in under her credentials.

131.    Plaintiff's statements regarding Defendant's access to and general maintenance of her ELD were related to Defendant's violations of federal motor carrier safety regulations. 49 U.S.C. §31105(a)(1)(A)(i).

132.    Accordingly, Defendant terminated Plaintiff based on her statements regarding Defendant's illegal conduct related to the use of her ELD, in violation of 49 U.S.C. §31105(a)(1)(A)(i).

<u>Defendant's Failure to pay Plaintiff is a Textbook Violation of the Wage Act</u>

133.    The Wage Act provides, in relevant part, that "Every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 Ill. Comp. Stat. 115/5.

134.    With respect to the Wage Act's mandate that employers pay their employees final compensation, the Wage Act, defines "final compensation," in relevant part, as:

> Payments to separated employees shall be termed "final compensation" and shall be defined as ***wages***, salaries…and any other compensation owed the employee by the employer pursuant to an employer contract or agreement between the two parties.

820 Ill. Comp. Stat. 115/2 (emphasis added).

135.    At all times relevant herein, Plaintiff fulfilled the obligations and completed the work she agreed to undertake for the Defendant.

136.    To date, Defendant has failed to pay Plaintiff her agreed to and earned wages despite Plaintiff fulfilling all of her obligations pursuant to the parties' agreement.

137.    By refusing to pay Plaintiff her earned wages, the Defendant has breached their agreement and violated the Wage Act.

## COUNT I
## AGAINST VINITA EXPRESS
## RETALIATION IN VIOLATION OF 49 U.S.C. §31105(a)(1)(A)(i)

138.    Plaintiff incorporates Paragraphs 1 - 137 as though fully set forth herein.

139. Plaintiff brings Count I against the Defendant for violations of the anti-retaliation provisions of the STAA based on her internal complaints regarding Defendant's violations of federal motor carrier safety regulations.

140. The STAA prohibits an employer from disciplining, discriminating or otherwise terminating an employee because she has filed a complaint related to a violation of a commercial motor, vehicle safety or security regulation, standard or order. 49 U.S.C. §31105(a)(1)(A)(i).

141. On or about August 5, 2020, and later, on August 11, 2020, Plaintiff engaged in protected activity by filing an internal complaint with Dmitry (LNU), that she was incapable of operating a commercial motor vehicle because her ability to do so and/or her alertness had been impaired as a result of fatigue from driving Defendant's vehicle, in violation of 49 C.F.R. §392.3.

142. On or about August 5, 2020, August 10, 2020, and finally on August 11, 2020, Plaintiff engaged in protected activity by filing a complaint with Dmitry (LNU), that she was unable to operate her commercial motor vehicle because she had been on-duty for a period of 14 consecutive hours without having taken 10 consecutive hours off-duty, in violation of 49 C.F.R. §395.3(a)(2).

143. On or about August 12, 2020, Plaintiff engaged in protected activity by filing a complaint with Dmitry (LNU), that she was unable to operate her commercial motor vehicle as she had been on-duty for a period of 8 consecutive days, and at least 70 hours without having taken, at minimum, 34 consecutive hours off-duty, in violation of 49 C.F.R. §395.3(b)(2) and 49 C.F.R. §395.3(c)(1).

144. On approximately August 5, 2020, and August 9, 2020, Plaintiff engaged in protected activity by filing a complaint with Dmitry (LNU) alleging that she was unable to log into her ELD as someone else was logged in under her name, as Defendant otherwise tampered with Plaintiff's ELD to misrepresent her hours driven, in violation of 49 C.F.R. §395.8(e)(2).

145.    On approximately August 9, 2020, Dmitry (LNU), Plaintiff engaged in protected activity by filing a complaint with Dmitry (LNU) alleging she was unable to log into her ELD, and in response, Dmitry (LNU) demanded Plaintiff approve all changes made by Albina (LNU) to her ELD regarding Plaintiff's hours driven, in violation of 49 C.F.R. §395.30(e).

146.    On approximately August 6, 2020, Plaintiff engaged in protected activity by filing a complaint with Dmitry (LNU) that she could not log into her ELD because someone else at the company was already logged in under her name, meaning Albina (LNU), altered the number of hours driven by Plaintiff, in violation of 49 C.F.R. §395.30(f).

147.    On approximately August 6, 2020, August 9, 2020, and August 10, 2020, Plaintiff engaged in protected activity by filing a complaint with Dmitry (LNU) that she was unable to access her ELD as someone was already logged in, namely Albina (LNU) who made entries to Plaintiff's ELD, in violation of 49 C.F.R §395.8(f)(2).

148.    On approximately August 10, 2020, Plaintiff engaged in protected activity by filing a complaint with Dmitry (LNU) that she was unable to access her ELD because someone else was already logged in, namely Albina (LNU) who falsely marked Plaintiff's pre-inspection report as completed in Plaintiff's ELD, in violation of 49 C.F.R. §396.13.

149.    Plaintiff filed several complaints related to the violation of a commercial motor vehicle safety or security regulation, standard, or order of the United States.

150.    Defendant discharged Plaintiff as a result of engaging in protected activity.

151.    Defendant's discharge of Plaintiff was a violation of 49 U.S.C. § 31105(a)(1)(A)(i).

152.    As a result of Defendant terminating her employment in violation of 49 U.S.C. § 31105(a)(1)(A)(i), Plaintiff suffered damages, including, but not limited to, humiliation, anger, fear from loss of employment, inconvenience, mental anguish, loss of enjoyment of life, injury to character and reputation, future pecuniary loss, and other future non-pecuniary loss.

## COUNT II
## AGAINST VINITA EXPRESS
## RETALIATION IN VIOLATION OF 49 U.S.C. §31105(a)(1)(B)(i)

153.    Plaintiff incorporates Paragraphs 1 - 137 as though fully set forth herein.

154.    Plaintiff brings Count II against the Defendant for violations of the anti-retaliation provisions of the STAA based on Plaintiff's refusal to operate one of the Defendant's vehicles, resulting in violations of federal motor carrier safety regulations.

155.    The STAA prohibits an employer from disciplining, discriminating or otherwise terminating an employee because the employee refused to operate a vehicle as the operation of said vehicle violates a regulation, standard, or order of the United States related to commercial motor vehicle safety, health, or security. 49 U.S.C. §31105(a)(1)(B)(i).

156.    On approximately August 5, 2020, and again on August 11, 2020, Plaintiff engaged in protected activity by refusing to operate Defendant's vehicle because her ability to operate Defendant's vehicle had been impaired as a result of being fatigued from driving, in violation of 49 C.F.R. §392.3.

157.    On or about August 6, 2020, August 10, 2020, and finally on August 11, 2020, Plaintiff engaged in protected activity by refusing to operate her commercial motor vehicle as she had been on-duty for a period of 14 consecutive hours without having taken 10 consecutive hours off-duty and continuing to drive, a violation of 49 C.F.R. §395.3(a)(2).

158.    On or about August 12, 2020, Plaintiff engaged in protected activity by refusing to operate a commercial motor vehicle as Plaintiff had been on-duty for 70 hours in a period of 8 consecutive days and had not been given at least 34 consecutive hours off-duty a in violation of federal motor carrier safety regulations, specifically, §395.3(b)(2) and §395.3(c)(1).

159. Plaintiff refused to operate one of Defendant's vehicles because the operation would have violated a regulation, standard, or order of the United States related to commercial motor vehicle safety, health, or security.

160. Defendant discharged Plaintiff as a result of engaging in protected activity.

161. Defendant's discharge of Plaintiff was a violation of 49 U.S.C. § 31105(a)(1)(B)(i).

162. As a result of Defendant terminating her employment in violation of 49 U.S.C. § 31105(a)(1)(B)(i), Plaintiff suffered damages, including, but not limited to, humiliation, anger, fear from loss of employment, inconvenience, mental anguish, loss of enjoyment of life, injury to character and reputation, future pecuniary loss, and other future non-pecuniary loss.

## COUNT III
## AGAINST VINITA EXPRESS
## ILLINOIS WHISTLEBLOWER ACT – RETALIATORY DISCHARGE

163. Plaintiff incorporates Paragraphs 1 - 137 as though fully set forth herein.

164. Plaintiff brings Count III against Defendant for violations of the IWA for retaliating against Plaintiff by discharging her for refusing to violate federal motor carrier safety regulations.

165. The IWA prohibits an employer from retaliating against an employee who refuses to participate in an activity that would result in a violation of state or federal law, rule, or regulations. 740 ILCS 174/20.

166. Plaintiff filed numerous internal complaints and refused to operate one of Defendant's trucks as said operation would result in a violation of federal motor carrier safety regulations.

167. Defendant retaliated against Plaintiff by terminating her employment, in violation of the IWA, based on Plaintiff's decision to file internal complaints and refusal to operate one of Defendant's trucks pursuant to the STAA and its attendant regulations.

168. Defendant violated the IWA by terminating Plaintiff.

169. Defendant's violation of the IWA was willful.

21

170. As a direct result of Defendant's violation of the IWA, Plaintiff has suffered loss of income, benefits, career opportunities, as well as humiliation and emotional distress.

**COUNT IV**
**AGAINST VINITA EXPRESS**
**COMMON LAW RETALIATORY DISCHARGE**

171. Plaintiff incorporates Paragraphs 1 - 137 as though fully set forth herein.

172. Plaintiff brings Count IV against Defendant based on the common law tort of retaliatory discharge.

173. Illinois law permits an employee to recover damages for retaliatory discharge from his former employer, if the former employer discharges the employee in retaliation for refusing to participate in an activity that the employee believes to be a violation of public policy. *Turner v. Mem'l Med. Ctr.*, 911 N.E. 2d 369, 374 (Ill. 2009).

174. To state a claim of retaliatory discharge, a plaintiff must establish that "(1) the employer discharged the employee, (2) the discharge was in retaliation for the employee's activities, and (3) the discharge violates a clearly mandated public policy. See *Roberts v. Board of Trustee of Community College District No. 508*, 135 N.E. 3d 891, 896 (Ill. 2019).

175. Illinois courts have consistently held that policies affecting the health and safety of citizens will support a retaliatory discharge claim. *Leweling v. Schnadig Corp.*, 657 N.E. 2d 1107, 1109-10 (Ill. App. Ct. 1995).

176. The Illinois Supreme Court has held that an employee may maintain a retaliatory discharge claim when he is terminated for refusing to work under conditions that contravene a clearly mandated public policy. *Tejack v. Quality Terminal Services, LLC*, 2000 WL 1720435, at *4 (N.D. Ill. 200) (citing *Wheeler v. Caterpillar Tractor Co.*, 485 N.E. 2d 372, 377 (Ill. 1985).

177. At all relevant times hereto and pursuant to the FMCSA, it is the policy of the federal government to maintain hours-of-service regulations to prevent truck driver fatigue, which is a primary

22

cause of large trucking accidents. Federal Motor Carrier Safety Administration, *Hours of Service* (HOS), United States Department of Transportation (Nov. 11, 2011, 2:24 PM), https://www.fmcsa.dot.gov/regulations/hours-of-service.

178.     Defendant terminated Plaintiff due to her submission of internal complaints regarding hours-of-service regulations and refusal to operate one of Defendant's trucks, that would result in a violation of FMCSA regulations.

179.     In accordance with the FMCSA, protecting the lives of citizens from fatigued truck drivers constitutes a public policy.

180.     Plaintiff reasonably believed that violating hours-of-service regulations was in violation of the public policy set forth in the FMCSA's regulations.

181.     As the direct result of her termination, Plaintiff suffered loss of income, benefits, and career opportunities, as well as humiliation and distress.

**COUNT V**
**AGAINST VINITA EXPRESS**
**WAGE ACT – UNPAID COMPENSATION**

182.     Plaintiff incorporates Paragraphs 1 - 137 as though fully set forth herein.

183.     Plaintiff brings Count V under the Wage Act based on the Defendant's failure to pay Plaintiff her earned, unpaid wages for having driven 3,569 miles for the Defendant.

184.     The Wage Act requires employers to pay their employees according to their agreements and to pay employees all earned wages or final compensation, including "any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties." 820 ILCS 115/2.

185.     Pursuant to the Wage Act, an agreement may be reached by the parties without the formalities and accompanying legal protection of a contract and may be manifested by words or any other conduct, such as past practice. 56 Ill. Adm. Code 300.450(b).

23

186.    Defendant promised to pay Plaintiff 0.52 cents per mile.

187.    Plaintiff performed the work pursuant to her agreement with the Defendant.

188.    At no point did the Defendant pay Plaintiff her earned wages for having driven 3,569 miles for the Defendant.

189.    By refusing to pay Plaintiff her earned wages, the Defendant has breached its agreement with her and denied her final compensation to which she was lawfully entitled.

190.    Defendant's failure to pay Plaintiff her agreed rate of pay violates the Wage Act. 820 ILCS 115/2.

191.    Defendant's violation of the Wage Act was willful.

192.    As a direct result of Defendant's violation of the Wage Act, Plaintiff has suffered damages in the form of lost earned compensation.

WHEREFORE, Plaintiff Lucia Caraveo respectfully requests that this Court enter an order, granting judgment in her favor against Defendant Vinita Express Inc., awarding her:

A.   Front pay;

B.   Back pay damages with interest;

C.   Compensatory damages;

D.   Damages for severe emotional distress;

E.   Litigation costs;

F.   Expert witness fees;

G.   Reasonable Attorney's fees;

H.   Punitive Damages;

I.   The amount of her earned and unpaid wages in the amount of $1,855.88, in accordance with the Wage Act;

J.    Statutory damages equivalent to the maximum statutory monthly interest penalties

available pursuant to 820 ILCS 115/14; and

K.    Any other relief deemed necessary and proper.


Dated:  December 15, 2021

The Garfinkel Group, LLC                              Respectfully submitted,
6252 N. Lincoln Avenue
Suite 200
Chicago, IL 60622                                          /s/ Max P. Barack
Max Barack (IARDC No. 6312302)               One of the Plaintiff's Attorneys
max@garfinkelgroup.com
Haskell Garfinkel (IARDC No. 6274971)
haskell@garfinkelgroup.com
Andrew Fullett (IARDC No. 6328490)
andrew@garfinkelgroup.com
(312) 736-7991